IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER BRIAN ROGERS,

Petitioner,

vs.

WILLIAM MUNIZ, Warden, Salinas Valley State Prison,[1]

Respondent.

No. 2:15-cv-01805-JKS

MEMORANDUM DECISION

Christopher Brian Rogers, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Rogers is in the custody of the California Department of Corrections and incarcerated at Salinas Valley State Prison. Respondent has answered, and Rogers has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On January 22, 2010, Rogers was charged with the first-degree murder of Juanita Johnson. The information further alleged that Rogers intentionally and personally discharged a firearm causing death or great bodily injury. Rogers pled not guilty and denied the allegation. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying the charges against Rogers:

[1] William Muniz, Warden, Salinas Valley State Prison, is substituted for Eric Arnold, Warden, California State Prison, Solano. FED. R. CIV. P. 25(c).

***Discovery of the Body and Initial Investigation***

At about 8:25 a.m. on Thanksgiving Day, November 25, 2004, Sothat Lee's (Lee) cousin discovered a lifeless female body outside Lee's front door. Lee's cousin was visiting from San Diego and had arrived about six hours earlier; no body was there then.

Lee lived at the intersection of 43rd Avenue and 40th Street in Sacramento. That intersection dead-ended within a block in both street directions, because of Highway 99, which ran diagonally through the area. Next to Highway 99's sound wall in this area was a small triangular grassy field (sometimes referred to as an easement). On the opposite corner of the block from Lee's house was Pacific Elementary School, at the intersection of 44th Avenue and 41st Street.

The body was later identified as that of the victim, Juanita Johnson. Police officers followed a blood trail from Lee's house to the triangular grassy field, where the evidence—most prominently, a large amount of pooled blood, and the beginning of the trail—indicated the shooting had taken place. Just a few feet away, officers discovered a fresh condom still containing a white substance.

***Johnson's Autopsy***

Johnson died from a single, not immediately fatal, gunshot wound to her face, which entered her right cheek, exited just below her left earlobe, and severed a major artery (the left maxillary). Gunpowder stippling found on Johnson's right cheek indicated she had been shot from a distance of one and a half to four feet. The forensic pathologist conducting the autopsy, who was not a ballistics expert, believed the bullet fragments that were recovered from Johnson were from a small to medium caliber gun (.22–caliber to .38–caliber). Johnson's body did not exhibit any classic defensive wounds.

The pathologist took swabs from Johnson's oral, vaginal, and rectal cavities.

***Johnson's Activities Before the Murder***

Johnson, who occasionally worked as a prostitute, had a casual relationship with Bernard Holland, who called her "Joyce." Around 4:00 a.m. on Thanksgiving Day, November 25, 2004, Johnson left Holland's house to go on a "date" (prostitution), after the rock cocaine the two had been smoking with two others, ran out.

Johnson never returned to Holland's house; she was supposed to be back by 8:00 a.m., as the two of them planned to spend Thanksgiving with Johnson's family.

Holland provided the police his DNA sample as well as his .38–caliber revolver, neither of which linked him to Johnson's killing.

***Cold Case and DNA Evidence***

Johnson's case went cold, until July 2009, when DNA test results linked [Rogers] to the matter.

The sperm in the condom recovered at the apparent shooting scene came from a single source matching [Rogers'] DNA profile. The sperm recovered from Johnson's vagina matched [Rogers'] DNA profile. And the sperm found in Johnson's rectum yielded a partial profile consistent with [Rogers'] DNA profile.

Furthermore, the sperm concentration on the vaginal swab disclosed a "4–plus" concentration (the highest score possible). A 4–plus concentration was consistent with the victim being motionless and/or horizontal shortly after intercourse; one would generally expect the concentration to diminish if, following intercourse, the person remained upright, walked some distance, and engaged in normal physical activities for some period of time.

***[Rogers'] Pretrial Statements***

The police interviewed [Rogers] twice: first on August 7, 2009, and again on October 1, 2009.

In both interviews, [Rogers] initially denied any familiarity with the apparent shooting scene, although evidence from his former girlfriend and from a clerk at the Pacific Elementary School disclosed that [Rogers] had driven regularly by that scene over a period of years, when he ferried his children to that school from the fall of 2001 to the spring of 2005. The school was just one block from the apparent crime scene. Confronted with some of this evidence, [Rogers] eventually conceded in the second interview that the crime scene did look a little familiar.

[Rogers] steadfastly maintained that he never owned a gun, never had a gun, never shot a gun, never possessed a gun, and never bought a gun, until overwhelming contrary evidence from his former girlfriend and from his own mother forced him to concede that he had possessed a gun (around the time of the murder), a "little .22," which "stayed under the mattress" and which he later sold to someone named "Buddy" (who could not be located). Evidence showed that when [Rogers'] former girlfriend moved out of [Rogers'] home toward the end of 2005, she discovered the gun under the mattress and gave it to [Rogers'] mother; when [Rogers] learned the gun was missing, he angrily and repeatedly called the former girlfriend demanding it.

[Rogers] denied recognizing Johnson, denied ever having sex with her, and denied ever hurting her. When confronted with the condom-DNA evidence, he acknowledged he may have had sex with Johnson.

Finally, [Rogers] claimed that the time period around 4:00 to 6:00 in the morning were "not [his] hours" and that he had been faithful to his former girlfriend, but his former girlfriend and other evidence (including from [Rogers] himself) contradicted these claims.

***[Rogers'] Interview with Sacramento Bee Reporter***

The day after his second police interview (October 2, 2009), [Rogers] told a Sacramento Bee reporter that he and Johnson had had sex in the room of a friend of Johnson's, that they had shared a pint of Courvoisier (cognac), and that after their time together, he drove her to the store and then back to the friend's place; she got out of the car and walked off, looking perfectly fine. [Rogers] also denied owning or having a gun (coinciding with the time of the incident).

A blood sample taken during Johnson's autopsy disclosed no alcohol in her system, but did show cocaine and cocaine metabolite.

*People v. Rogers*, No. C067770, 2013 WL 870617, at *1-3 (Cal. Ct. App. Mar. 11, 2013).

On May 20, 2012, Rogers proceeded to a jury trial. After seven days of deliberations, the jury reported that it was hopelessly deadlocked, and the trial court declared a mistrial on June 28, 2010.

A second trial began on September 27, 2010. At the conclusion of that trial, the jury found Rogers guilty of first-degree murder and found true the allegation that he personally discharged a firearm to commit the murder. The trial court then sentenced Rogers to an aggregate term of 50 years to life imprisonment.

Through counsel, Rogers appealed his conviction, arguing that: 1) there was insufficient evidence to prove that Rogers murdered Johnson; 2) there was insufficient evidence of premeditation and deliberation to sustain Rogers' first-degree murder conviction; 3) the prosecutor committed misconduct during closing and rebuttal arguments; and 4) Rogers was entitled to 10 additional days of credit for time served. Respondent conceded that Rogers was entitled to the additional time-served credit, but otherwise opposed the appeal. A unanimous panel of the Court of Appeal modified the judgment to add the 10 days of credit but affirmed the judgment against Rogers in all other respects in an unpublished, reasoned opinion issued on March 11, 2013. *Rogers*, 2013 WL 870617, at *5. Rogers petitioned for review in the California Supreme Court, which was denied without comment on June 12, 2013.

Rogers then filed a *pro se* petition for habeas relief in the superior court. In that petition, Rogers alleged that trial counsel was ineffective for failing to: 1) obtain a DNA expert to challenge the state's expert testimony about semen concentration and the possibility of semen transfer; and 2) obtain a ballistics expert to prepare a defense regarding bullet fragments and

firearm caliber. He also argued in claim 3 that his due process rights were violated because it was not proven beyond a reasonable doubt that Rogers willfully, deliberately, and with premeditation murdered Johnson. He additionally contended in claim 4 that the "introduction of cross-racial identification bullet fragments and firearm" violated due process. Finally, he claimed that he was denied due process because the prosecution relied on "a firearm that is irrelevant and unknown in the crime." The superior court dismissed the petition as untimely and also found the claims procedurally barred and without merit.

Rogers raised the same claims in a *pro se* habeas petition in the Court of Appeal. Upon the Court of Appeal's request, Respondent filed a written opposition. The Court of Appeal denied the petition without comment on April 16, 2015. Rogers then filed a *pro se* petition to the California Supreme Court, which was summarily denied on July 29, 2015.

Rogers then timely filed a *pro se* petition to this Court.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Rogers argues that: 1) evidence was insufficient to establish that he was the killer or that the killer deliberated and premeditated; 2) the prosecutor committed multiple instances of misconduct; 3) his trial counsel was ineffective for failing to obtain a DNA expert; and 4) his trial counsel was ineffective for failing to obtain a ballistics expert.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona*, 497 U.S. 639, 653 (1990) (presuming that the state

court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Ground 1. <u>Insufficiency of the Evidence</u>

Rogers first argues that the evidence presented at trial was legally insufficient to establish that he was the killer or that the killer acted with deliberation and premeditation. As articulated by the Supreme Court in *Jackson*, the federal constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the California court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical

facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *Schlup v. Delo*, 513 U.S. 298, 330 (1995). The United States Supreme Court has recently even further limited a federal court's scope of review under *Jackson*, holding that "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam). *Jackson* "makes

clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Id.* at 3-4. Under *Cavazos*, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* at 4 (*quoting Renico v. Lett*, 559 U.S. 766, 773 (2010)).

In support of his claim, Rogers argues that certain evidence linking him to the crime creates too much doubt to sustain his conviction. But this argument simply points out inconsistencies in the evidence before the jury; all of the evidence he identifies in support of his claim was before the jury for its assessment. This Court is precluded from re-weighing the evidence. *Schlup*, 513 U.S at 330.

The Court of Appeal recited the following facts in rejecting Rogers' claim that there was insufficient evidence that Rogers was the murderer:

> Suffice it to say, the DNA and condom evidence strongly linked [Rogers] to victim Johnson shortly before her death. This evidence encompassed the highest possible measurement of sperm concentration on the vaginal swab from Johnson, and also encompassed [Rogers] as the single source of the DNA.
>
> [Rogers'] fabrications to the police, especially those involving his unfamiliarity with Johnson, his unfamiliarity with the scene of the shooting, and his unfamiliarity with any firearm, were especially damning. His statements to the Sacramento Bee reporter of his familiarity with Johnson and his unfamiliarity with a gun, just a day after his second police interview, only added fuel to the fire of circumstances against him. And the post-shooting anger he leveled at his former girlfriend upon learning that his gun was missing, a gun that was consistent with the shooting, suggested a certain consciousness of guilt.

*Rogers*, 2013 WL 870617, at *3.

Viewing that evidence in the light most favorable to the verdict, a reasonable juror could certainly infer that Rogers was the murderer. In any event, the record does not compel the conclusion that no rational trier of fact could have found proof that Rogers was the murderer.

Rogers also argues that the evidence was insufficient to prove premeditation or deliberation. In support of his claim, Rogers points to the lack of evidence demonstrating motive or his planning the attack. But under federal law, like California law, "lack of evidence presented at trial to establish a motive on the part of the defendant to kill the victim does not preclude a reasonable juror from finding sufficient evidence of premeditation." *United States v. Reza-Ramos*, 816 F.3d 1110, 1124 (9th Cir. 2016). Here, the Court of Appeal acknowledged that "[t]his sufficiency question is the tougher one, largely because there was no evidence as to why Johnson was killed." *Rogers*, 2013 WL 870617, at *3. That court nonetheless concluded that "the evidence regarding planning and the manner of killing provides sufficient evidence of premeditation and deliberation to sustain the jury's finding." *Id.* at *4. It reasoned:

> We can state flatly that there was no evidence of any motive presented here—again, no evidence as to why Johnson was killed.
>
> The killing took place in a somewhat secluded area next to a freeway with a sound wall, in the darkness of an early morning on a heavily traveled holiday. [Rogers] knew this area well. The victim was a prostitute who had just plied her trade with [Rogers]. Evidence showed that [Rogers] armed himself with a loaded gun prior to taking Johnson to the secluded area. All of this suggests planning. (*People v. Elliot* (2005) 37 Cal.4th 453, 471 ["'the total vulnerability of the victim and the evidence of a previously selected remote spot for the killing do suggest planning'"]; *People v. Morris* (1988) 46 Cal.3d 1, 23 ["Clearly, when one plans to engage in illicit activity [prostitution, in that case] at an isolated location during the early morning hours, and one brings along a deadly weapon which is subsequently employed, it is reasonable to infer that one 'considered the possibility of homicide from the outset'"], *disapproved on other grounds in In re Sassounian* (1995) 9 Cal.4th 535, 543–544 & fn. 5.)
>
> Furthermore, the evidence shows that [Rogers] shot Johnson in the head from close range, from just a few feet away. Johnson did not exhibit any classic defensive wounds, and she and [Rogers] had engaged in vaginal and anal sex shortly before the shooting. Most likely, [Rogers] did not have the gun in his hand while having sex with

> Johnson (and, if he did, this is no better for him from a standpoint of premeditation and deliberation). This means that at some time after having sex, [Rogers] reached for his loaded gun, pointed it at Johnson's head, and pulled the trigger. All of this points to a deliberate manner of killing—a cold, calculated decision to kill. (*People v. Marks* (2003) 31 Cal. 4th 197, 230 [a close-range shooting to the head or face without provocation or evidence of struggle may show premeditation and deliberation]; *People v. Halvorsen* (2007) 42 Cal.4th 379, 422 [same]; *People v. Caro* (1988) 46 Cal.3d 1035, 1050 [same].)

*Id*.

Although it might have been possible to draw a different inference from the totality of the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Thus, considering the deference owed under *Jackson*, *Cavazos*, and the AEDPA, this Court concludes that there was sufficient evidence introduced at trial from which a rational trier of fact could have found beyond a reasonable doubt that Rogers was guilty of the first-degree murder of Johnson. Rogers is therefore not entitled to relief on his insufficiency of the evidence claim.

Ground 2. Prosecutorial Misconduct

Rogers next contends that the prosecutor committed misconduct by improperly arguing to the jury that: (1) the jury would be derelict in its duty if it failed to reach a verdict, and that a hung jury would allow a murder to go unpunished; (2) the jury was required to solve a puzzle created by the evidence; (3) deliberation and premeditation were established as long as the evidence showed that sufficient time had elapsed for it to occur; and (4) the defense had the burden to disprove certain aspects of the prosecution's case.

To successfully raise a claim cognizable on habeas review based on a prosecutor's comments at trial, a petitioner must demonstrate that the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v.*

*Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Under this standard, only egregious prosecutorial misconduct can give rise to a constitutional claim. *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). A prosecutor's comments in summation constitute grounds for reversal only when the remarks caused actual prejudice. *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004) (applying harmless error test to claim of prosecutorial misconduct in summation). Moreover, a prosecutor must have "reasonable latitude" to fashion closing arguments. *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991).

As an initial matter, counsel did not object to any of the challenged statements; the Court of Appeal thus found that Rogers had forfeited all four claims. *Rogers*, 2013 WL 870617, at *4. The forfeited claims are therefore procedurally defaulted from federal habeas review under the contemporaneous-objection rule. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (a federal court will not review a claim if the state court's rejection of the claim rests on a state law ground that is independent of the federal question and adequate to support the judgment). The Ninth Circuit has repeatedly recognized and applied the California contemporaneous objection rule in affirming denial of a federal habeas petition on grounds of procedural default where there was a complete failure to object at trial. *See, e.g.*, *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004). The state court's application of the procedural bar thus dooms Rogers' claims here.

In any event, even if the claims were not procedurally defaulted, Rogers is not entitled to relief on them. The Court of Appeal alternatively concluded that the prosecutor's comments did not constitute misconduct:

> First, the prosecutor's comments about the dereliction of duty, about a hung jury equating to no trial, and about a murder going unpunished, were made in the context of the prosecutor's admonishment to the jury to not let a failure to agree on first degree murder derail a verdict; a second degree verdict would suffice. [Rogers] likens these remarks to the prosecutor's discredited jury pressure tactics found in *People v. Pitts* (1990) 223 Cal. App. 3d 606. In *Pitts*, the prosecutor told the jury that the defense needed only one vote to block a conviction, and that if the prosecution persuaded only 11 jurors, "'[i]t wipes out six months [of trial], folks. It's as though it never existed.'" (*Id*. at p. 695, some capitalization omitted.) The challenged comments and context here do not rise to the pressure level displayed in *Pitts*.
>
> Second, [Rogers] faults the prosecutor's theme that this circumstantial case was akin to a puzzle that could be solved by putting "all" the pieces together. This line of argument did not approach that of the argument we deemed misconduct in *People v. Katzenberger* (2009) 178 Cal. App. 4th 1260, upon which [Rogers] relies. In *Katzenberger*, the prosecutor analogized the reasonable doubt standard to an eight-piece slide show puzzle of the Statue of Liberty, telling the jurors after the sixth piece was in place that the reasonable doubt standard was met. (*Id*. at pp. 1264, 1267.) The problem with the argument in *Katzenberger* was that by using such a well-known image in such a simple way—enabling some jurors to guess the image after only one or two pieces—the argument effectively told the jurors the reasonable doubt standard could be met in an obvious way with just a few pieces of evidence. (*Id*. at p. 1267.)
>
> Third, [Rogers] maintains the prosecutor improperly analogized the finding of premeditation and deliberation to the process of deciding whether to stop or go on a yellow traffic light, thereby misstating the law on this issue. But the prosecutor used the traffic light decisionmaking process simply as an example of how a cold, calculated judgment could be formed in a short period of time. As the prosecutor correctly reminded the jury, it was "the extent of the reflection, not the time," that mattered.
>
> Fourth, and finally, although the prosecutor unfortunately used the phrasing that the defense had failed in its "proof" in this case (in noting the defense's failure to challenge or dispute the prosecution's evidence), the prosecutor did so in the context of also telling the jury, correctly, that "the judge has told you that the defense doesn't have to prove anything, and that's absolutely true. We have to prove to you beyond a reasonable doubt that the defendant committed this crime."

*Rogers*, 2013 WL 870617, at *5.

As support of his claim that the challenged statements constituted misconduct, Rogers cites only to state law. But again, federal habeas relief is not available for alleged errors of state law. *Swarthout*, 131 S. Ct. at 863. Rogers points to no federal law that the appellate court's determinations contravene or unreasonably apply, and this Court is not aware of any. Indeed, the

trial court properly instructed the jury on the elements of first degree murder, reminded the jurors that what the attorneys say is not evidence and that, in the case of conflict, the juror must follow the law as given by the court. Likewise, the trial court clearly articulated that the entire burden of proof was on the prosecution. We must presume that the jury followed its instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). In light of the record and the instructions as a whole, this Court cannot say that the appellate court's resolution of this claim was unreasonable or that the prosecutor's remarks deprived Rogers of a fair trial. Rogers is therefore not entitled to relief on this claim.

Grounds 3, 4. Ineffective Assistance of Counsel

Finally, Rogers claims that trial counsel was ineffective for failing to offer DNA and ballistics experts. According to Rogers, a DNA expert was necessary to challenge the state expert's testimony regarding the semen concentration found in the victim's body cavity and to investigate the possibility of "semen transfer." Rogers also claims that a ballistics expert should have investigated the two bullet fragments that were found during an autopsy of the victim's body.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established

prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Rogers must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Rogers cannot show ineffective assistance of counsel here. First, these claims are also procedurally barred. In considering Rogers' state habeas petition, the Superior Court's denied each of these claims with a citation to *In re Robbins*, 959 P.2d 311 (Cal. 1998), and *In re Clark*,

855 P.2d 729 (Cal. 1993), which reflects they were untimely, *Walker v. Martin*, 131 S. Ct. 1120, 1126 (2011). The Ninth Circuit has held that California's "substantial delay" timeliness standard satisfies the "independent and adequate" requirement. *See Bennett v. Mueller*, 322 F.3d 573, 582-83 (9th Cir. 2003); *see also Walker*, 131 S. Ct. at 1131 (finding that California's timeliness standard is adequate).

Moreover, Rogers offers nothing but conclusory statements that such experts existed, that his trial counsel failed to consult with the experts, and that the testimony from the unidentified experts would have been led to a favorable outcome. This lack of evidentiary support is fatal to his claim. *See Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (petitioner's own self-serving statements insufficient to support claim of ineffective assistance of counsel without corroborating evidence); *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (mere speculation that evidence might be helpful insufficient to establish ineffective assistance); *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (rejecting claim of ineffective assistance for failure to call witness based upon lack of affidavit from witness regarding substance of testimony).

V. CONCLUSION AND ORDER

Rogers is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: July 5, 2016.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge